Filed 9/16/20  Marriage of Nott CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b) . This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re Marriage of DAVID MICHAEL and SUE NOTT. | B293055 |
| | (Los Angeles County Super. Ct. No. VD082768) |
| DAVID MICHAEL NOTT, | |
| Petitioner and Respondent, | |
| v. | |
| SUE NOTT, | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Charles Clay III, Judge. Affirmed in part, reversed in part, and remanded.

Sue Nott, in pro. per., for Appellant.

Gilligan Frisco & Trutanich, John J. Gilligan, for Petitioner and Respondent.

Eighteen years after they married, David Nott (David) filed a petition in court to dissolve his marriage to Sue Nott (Sue). Seven years later, their divorce proceedings were still ongoing. In this appeal (the second to arise from the dissolution proceedings), Sue challenges aspects of the judgment of dissolution and several postjudgment orders. The majority of Sue's appellate claims are untimely or arise from unappealable orders. Our consideration of the issues on the merits is therefore limited to her appeal of family court orders imposing sanctions on her.

## I.  BACKGROUND

*A. The Dissolution Petition and Judgment*[1] David and Sue were married in 1995. They had two children, Ryan (born in 1998) and S.N. (born in 2002). Ryan suffers from muscular dystrophy, which means he needs ongoing support. David filed a petition for dissolution of the marriage in November 2013.

A trial on the dissolution petition was set for March 14, 2016. By that time, Sue was represented by her fourth attorney. Sue did not appear in court on the morning of trial and her attorney made an oral motion to continue due to her absence. Counsel did not give a reason for Sue's absence and David opposed the request. In arguing against a continuance, David stated that each time Sue obtained a new attorney, the parties would reach a settlement, David's attorney would draft a stipulated judgment, and Sue would then refuse to sign it and retain new attorney. David argued a continuance would only increase the costs to the parties and would not change the trial

_____

[1]     A more detailed account of the proceedings appears in this court's prior opinion addressing Sue's last appeal (*In re Nott*, Dec. 5, 2018, B283679 [nonpub. opn.]). We summarize the pertinent events, drawing on our prior opinion.

2

results. The family court denied the motion to continue, finding no good cause shown.

The matter proceeded to trial with David, his attorney, and Sue's attorney present. The court dissolved the marriage, granted the parties joint legal custody of the children, and awarded physical custody of the children to Sue. The court also made a series of related orders, including an order for David to pay spousal and child support, an order directing the parties to share uninsured medical expenses and childcare costs, and orders regarding the family home and Sue and David's respective retirement plans.

Sue filed a motion for new trial in May 2016. The court issued a minute order denying that motion in early July, and David filed and served a notice of ruling a few days later.

The family court entered the judgment of dissolution on October 12, 2016. Regarding the parties' pension and defined benefit plans, the judgment provisionally awards them separate interests equal to one-half of benefits accrued or to be accrued under each of three relevant plans. It further orders the parties' interests in the plans should be divided pursuant to a Qualified Domestic Relations Order (QDRO). Sue and David were to agree upon a person experienced in preparing QDROs, who would prepare the orders and obtain approval from the respective plans. The family court retained jurisdiction over the preparation or amendment of any QDROs. It also retained jurisdiction to make orders and determinations to enforce the terms of the judgment, resolve disputes concerning its terms, and resolve other matters subject to the court's jurisdiction.

B.     *Hearings and Orders Leading to the Prior Appeal*

In September 2016, Sue filed an ex parte application seeking adult child support for Ryan, who was about to turn 18 years old. The family court found there was no basis for proceeding ex parte and set the request for order for a regular

noticed hearing. In the meantime, David filed a responsive declaration in which he requested attorney fees under a provision of the Family Code that authorizes such an award where the conduct of a party or attorney frustrates the policy of the law to promote settlement of litigation and to reduce the cost of litigation (Fam. Code, § 271).

Before the hearing to consider adult child support, Sue filed another request for order, this one asking the court to rule on various issues concerning custody of the children, the parenting schedule, spousal support, child support, adult child support, and attorney fees, among other things.

The family court held a hearing on Sue's order requests and David's request for sanctions in March 2017. The court took Sue's request for an order on custody off calendar because the parties had not attended mediation. The court denied the remainder of her requests. The court also imposed $15,000 in sanctions against Sue, finding her various order requests were essentially requests for reconsideration of the orders made at trial and largely frivolous.

Sue noticed an appeal from these rulings. In this court's prior unpublished opinion, we reversed the order denying Sue's request for an adult child support order. We remanded with directions to enter an order requiring David to continue to pay child support for Ryan, effective as of Ryan's 18th birthday, until further court order. (*In re Nott*, Dec. 5, 2018, B283679 [nonpub. opn.].) We otherwise affirmed, including as to the family court's denial of Sue's request for spousal support and its order imposing Family Code section 271 sanctions on Sue.

C.     *Subsequent Requests and Orders*

1.     *David's request for domestic relations orders*

In November 2017, David filed a request for an order asking the family court to enter, without Sue's signature, domestic relations orders that had been prepared by a QDRO

4

attorney. David also sought attorney fees incurred in connection with his request that the court enter such an order.

According to the declaration and exhibits David filed with his request, David's attorney had prepared a QDRO for David's annuity plan but Sue refused to sign it. Sue instead selected a QDRO attorney to prepare the three QDROs the parties needed. She and David were to share the attorney fees. That QDRO attorney prepared the documents as planned, but two months later, Sue informed the attorney she selected that she would not approve the QDROs because they did not contain all the suggested language provided by the pension plans. The attorney explained the suggested language was a guideline not a requirement and informed Sue he would send the documents to the pension plan administrators for preapproval once Sue and David had reviewed them. He further explained that if the plan attorneys asked him to make any changes to the drafts, he would do so before either Sue or David signed them. (He added he would charge an additional fee if he were unnecessarily forced to spend extra time completing the QDROs.) Sue later sent the attorney additional input and questions regarding the drafts and he responded by sending her editable copies of the QDROs he prepared with an invitation to make any changes she desired. Sue, however, did not make any revisions nor did she authorize the attorney to send the QDROs to the plan attorneys.

Sue's responsive declaration described her interactions with the QDRO attorney in detail and contended the attorney failed to address her concerns regarding potential QDRO qualification issues. Sue also described correspondence she personally exchanged with counsel for one of the plans. Sue stated that following the attorney's email inviting her to modify the QDROs herself, she realized he was not the right attorney for the job, began looking for a different attorney, and retained another firm to prepare the QDROs. Sue informed David she had done so in January 2018. Sue objected to David's request for

5

sanctions, asserting she had been proactive and involved in the QDRO process and denying she had acted in bad faith or employed delaying tactics.

David filed a reply contesting certain aspects of Sue's account. David asserted that he had been unaware Sue was unhappy with the prior QDRO counsel, that Sue had not consulted with him about retaining new counsel, and that he did not know the identity of new counsel.

### 2. Sue's request for orders regarding the family home and Ryan's care

Before the family court held a hearing on David's request to enter domestic relations orders, Sue filed a separate request for order to be heard at the same time. That request asked the court to order the sale of the Nott family home, asserting David had agreed to sell his interest to her for $84,000. Sue's supporting declaration contended, in short, that David had agreed to sell her his interest in the family home in exchange for $84,000 but his attorney later insisted the agreement required Sue to refinance the mortgage to remove David's name from the loan. She asked the court to approve the exchange without the refinance. Sue also separately asked the court to issue a writ of execution in the amount of $3,740.27,[2] which Sue represented was David's portion of costs incurred to care for Ryan.

David filed a responsive declaration asking the court to deny both of Sue's requests. David maintained he had offered to sell his interest in the family home only on the condition that Sue refinance the mortgage to remove his name from the loan. David also asserted the family home had appreciated in value, his community property interest was greater than the amount for

_____

[2] The amount Sue stated she was requesting in her declaration and the amount she listed in the request for order were different.

6

which he offered to sell Sue the home, and the order Sue had requested would result in an unequal division of a community asset. As to the requested writ of execution, David asserted Sue had not asked for his consent prior to incurring the expenses for Ryan and asked the court to order Sue to comply with the judgment's requirement that the parties meet and confer regarding expenses.

3. *The March 2018 hearing on both requests* The family court held a hearing in March 2018 to decide the pending requests for orders filed by David and Sue. The court denied Sue's request for an order requiring David to sell his community property interest in the home, stating it could not make that order without first determining the dollar value of the community interest and any separate property interest either party might have. The court noted it still retained jurisdiction over the asset and could make orders upon which the parties actually agreed. The court also denied Sue's request for a writ of execution, finding it vague and inconsistent with the judgment of dissolution. The court explained Sue had not specifically set forth the amounts for which she contended David was liable, the period of time during which those amounts were incurred, and the reasons for the expenditures.

The court continued David's request to enter the QDROs (which had been signed by David, but not Sue) based on Sue's representation that she had signed a new QDRO (prepared by new QDRO counsel). The court ordered Sue to provide David with a copy. Regarding David's request for sanctions in the form of attorney fees, the court believed Sue's termination of the prior QDRO attorney was premature and her refusal to sign the QDROs he prepared was unwarranted. Finding that the issue could have been resolved without the expenditure of attorney fees and that Sue's conduct was inconsistent with the goals of Family

7

Code section 271, the court imposed sanctions in the amount of $2,500.

The family court issued two minute orders following this March 2018 hearing, one addressing David's request for order, and one addressing Sue's. Although the court did not order or request David to prepare an order after hearing on the record during the hearing, the court's minute order addressing David's request for hearing and imposing sanctions on Sue stated David should prepare a written order after hearing, serve it on Sue for approval, and submit it to the court for signature. The minute order addressing Sue's request for order did not instruct the preparation of an order after hearing.

David served Sue with a draft order after hearing in April 2018. Sue objected to the draft. On June 4, 2018, the court ultimately signed and filed two orders after hearing (only one of which it had requested) memorializing its rulings at the earlier March hearing. There is no proof of service in the record on appeal that demonstrates when (or if) Sue was served with copies of the final orders after hearing.

D.    Sue's Motion for Reconsideration
      1.The motion and responses

Before those orders after hearing were finalized, Sue filed a motion for reconsideration. Sue asserted she had recently learned of additional options for dividing community property, including exchanging her share of the interest in David's annuity plan for his interest in the family home. Sue asked the court to allow her to exercise that option. Sue also asked the court to reverse its decision not to order David to sell his interest in the family home because she had attempted to apply for a refinance to remove David's name from the loan but was told she did not qualify because David's counsel had placed a lien on the home. Sue also asked the court to order David to pay for half of Ryan's care expenses based on "new facts": Sue and David had met and

8

conferred regarding the costs, David demanded contingencies be met before he would reconsider sharing the expenses, and meeting those contingencies was not a condition previously imposed by the court.

David filed a responsive declaration opposing Sue's motion for reconsideration and asking the court to sanction Sue $5,000. David's attorney submitted a declaration averring he advised Sue he would seek sanctions if she went forward with her reconsideration motion because it was frivolous but Sue refused to withdraw the motion. David's attorney stated the request for sanctions was made pursuant to Family Code section 271 and Code of Civil Procedure section 128.7.[3]

Sue's reply declaration maintained her reconsideration motion was based on new facts and circumstances. She also asserted David's request for sanctions should be denied because the motion was not frivolous or intended to cause delay. Sue additionally asked the family court to rescind the $2,500 sanctions it previously imposed (even though her initial motion had not sought reconsideration of that order).

### 2. The hearing

At the hearing on Sue's motion for reconsideration, the court found she presented no new facts justifying reconsideration. The court explained Sue's recitation of information she claimed to have recently learned was all knowable at the time of the original March hearing, and thus, not a basis for reconsideration. The court further found many of Sue's other arguments were merely points where she disagreed with the court's ruling, and again, not

_____

[3]     "Under Code of Civil Procedure section 128.7, a court may impose sanctions for filing a pleading if the court concludes the pleading was filed for an improper purpose or was indisputably without merit, either legally or factually." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440.)

a proper ground for reconsideration. Regarding David's request for sanctions, the court found Sue's demands had been unreasonable and she did not understand the import of certain facts, legal language, and previous findings made by the court. The court imposed sanctions in the amount of $4,500 based on its conclusion there was no good faith basis to bring the motion for reconsideration, which included requests that the court issue rulings that were clearly beyond the jurisdiction of the court.

The family court directed David to prepare an order after hearing memorializing its decision. David did so, and the order after hearing was signed and filed on August 10, 2018. Sue filed her notice of appeal on October 3, 2018.

## II. DISCUSSION

Sue's appeal presents eight issues stemming from the judgment of dissolution and the several orders entered between March 2016 and August 2018. All but two of these issues are not properly before us, either because Sue's appeal of the particular ruling in question is untimely or because rulings on motions for reconsideration are not separately appealable. The only issues that are properly before us are the family court's two sanctions orders, the first issued in June 2018 and the second in August 2018.

The family court did not abuse its discretion by issuing the former sanctions order. The court reasonably found Sue's behavior frustrated the policy of promoting settlement of issues and cooperation among parties. The latter sanctions order, however, must be reversed because David's request for sanctions did not comply with two procedural prerequisites specified in Code of Civil Procedure section 128.7 itself, namely, that a party to be sanctioned must first be served with a sanctions motion 21 days before it is filed and that a request for sanctions must be made separately from another motion.

10

*A.    Appealability*

*1.    The appeal of most of the orders is untimely*

Under the California Rules of Court (except in case of certain circumstances that are not at issue here), a "notice of appeal must be filed on or before the earliest of: [¶] (A) 60 days after *the superior court clerk serves* on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, showing the date either was served; [¶] (B) 60 days after the party filing the notice of appeal serves or *is served by a party* with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or [¶] (C) 180 days after entry of judgment." (Cal. Rules of Court, rule 8.104 (a)(1), emphasis added; see also Cal. Rules of Court, rule 8.104(e) [defining "judgment" to include an appealable order].)

"Orders are 'entered' on the date of entry in the written minutes, or the date the signed order is filed. [Citation.]" (*In re Marriage of Mosley* (2010) 190 Cal.App.4th 1096, 1101.) "[N]o court may extend the time to file a notice of appeal. If a notice of appeal is filed late, the reviewing court must dismiss the appeal." (Cal. Rules of Court, rule 8.104(b); see also *Beresh v. Sovereign Life Ins. Co.* (1979) 92 Cal.App.3d 547, 551 [rule that an appeal must be timely filed is jurisdictional, and an appellate court has no discretion to hear an untimely appeal but must dismiss it on its own motion].)

Sue filed her notice of appeal on October 3, 2018. The judgment after trial in this case was entered almost two years before that notice of appeal, on October 12, 2016. The order denying Sue's motion for new trial was entered on July 7, 2016. The order after hearing following the March 2017 hearing regarding child support for Ryan and other matters was signed

11

and filed on April 24, 2017.[4] Far more than 180 days passed between the date of the notice of appeal and the entry of the dissolution judgment or any of these subsequent orders. Sue's appeal as to these issues is therefore untimely. (See *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170.)

Sue additionally challenges rulings the family court made at the hearing in March 2018. At the March hearing, the family court ruled on David's request that the court enter domestic relations orders and Sue's request for orders regarding the family home and Ryan's care. The court issued separate minute orders memorializing its rulings on the requests by each party.

The family court did not instruct David to prepare an order after hearing in connection with its rulings on Sue's requests, so the court's ruling on the issues raised by Sue was "entered" by operation of law on the day the court issued its minute order, March 26, 2018.[5] (Cal. Rules of Court, rule 8.104(c)(2) ["The entry date of an appealable order that is entered in the minutes is the date it is entered in the permanent minutes. But if the minute order directs that a written order be prepared, the entry date is the date the signed order is filed; a written order prepared under rule 3.1312 or similar local rule is not such an order prepared by direction of a minute order"].) Sue's notice of appeal was filed more than 180 days after that date, and her appeal of the family court's ruling on that request is accordingly untimely.

_____

[4]    Sue previously appealed the family court's rulings at this hearing, and we addressed her claims in our prior unpublished opinion. (*In re Nott*, Dec. 5, 2018, B283679 [nonpub. opn.].)

[5]    While David ultimately prepared an order after hearing regarding Sue's requests, which the court signed, that order is irrelevant for purposes of appeal because the court did not direct him to prepare it. (See Cal. Rules of Court, rule 8.104(c)(2) ["a written order prepared under rule 3.1312 or similar local rule" does not affect entry date of appealable order].)

12

The analysis and outcome are different with respect to the family court's ruling on the relief requested by David (including the court's imposition of sanctions on Sue) because the minute order memorializing that ruling instructed David to prepare an order after hearing.[6] As a result, the deadline to appeal from that ruling began to run when the family court entered the order after hearing, on June 4, 2018. Since the record does not contain a proof of service indicating when a copy of the signed order was served on Sue, the only deadline for filing a notice of appeal that applies is the longest deadline: 180 days from the date of entry of the order.[7] (Cal. Rules of Court, rule 8.104(a)(1)(C).) Sue's noticed an appeal of that order within that timeframe and the appeal, insofar as it challenges the court's ruling in that order after hearing, is timely.

---

[6] The family court did not orally direct David to prepare an order after hearing during the hearing itself. But as we have said, the minute order does instruct David to prepare an order after hearing. While "[c]onflicts between the reporter's and clerk's transcripts are generally presumed to be clerical in nature and are resolved in favor of the reporter's transcript unless the particular circumstances dictate otherwise" (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 249), "a trial court's oral ruling on a motion does not become effective until it is filed in writing with the clerk or entered in the minutes" (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1170). "Furthermore, when the trial court's minute order expressly indicates that a written order will be filed, only the written order is the effective order." (*Ibid.*) We therefore treat the family court's minute order as controlling in these circumstances.

[7] David points to a proof of service in the record, arguing it demonstrates he served the order after hearing on Sue in April 2018—before the order was signed. While it appears David indeed served a draft of the order on Sue on that date, the service of a draft order, unsigned by the court, has no bearing on the deadline to appeal from the entry of the order.

### 2. *Rulings on motions for reconsideration are not separately appealable*

Sue also seeks to challenge the family court's June 2018 order denying her motion for reconsideration. The family court ordered David to prepare an order after hearing to memorialize that ruling, and the order after hearing was filed on August 10, 2018. Because the record again includes no proof of service demonstrating when this signed order was served on Sue, the 180-day notice of appeal deadline applies. Under that standard, Sue's appeal of the reconsideration order would be timely. But timeliness is not the problem.

Motions for reconsideration are not separately appealable. Rather, a litigant may appeal a ruling on a motion for reconsideration only through an appeal from the underlying order. (Code Civ. Proc., § 1008, subd. (g) ["An order denying a motion for reconsideration . . . is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order"].) Since we have already concluded Sue did not timely appeal the underlying order, we similarly conclude the substance of her motion for reconsideration cannot be considered now.

There was, however, one matter decided at the hearing held to consider Sue's reconsideration motion (later memorialized in the family court's August 2018 order) that was not a request for reconsideration: the court's imposition of sanctions on Sue. An appeal of the underlying order would not have encompassed that sanctions award. The family court's order granting sanctions in connection with the motion for reconsideration is therefore properly before us in this appeal.

14

### B. The Family Court Did Not Abuse Its Discretion by Ordering Sanctions Under Family Code Section 271

As we have already explained, Family Code section 271 (section 271) allows the court to "base an award of attorney[ ] fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (Fam. Code, § 271, subd. (a).) "Expressed another way, section 271 vests family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1318.)

"We review an award of attorney fees and costs under section 271 for abuse of discretion. . . . We review any factual findings made in connection with the award under the substantial evidence standard." (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 291.)

Sue contends the family court abused its discretion because her requests were not frivolous and she complied with the "court's requirements" for her motion. This, however, is not the standard for the imposition of sanctions under section 271. Based on the record before us, there are ample grounds on which the family court could properly find Sue had unreasonably frustrated the settlement of family law litigation.

David's request for section 271 sanctions was based on Sue's behavior related to the QDROs. The dissolution judgment instructed the parties to agree upon an experienced individual to prepare the QDROs, and further instructed that individual was to prepare the orders and obtain approval from the respective plans. Sue was the one to select initial QDRO counsel, and that attorney had prepared QDROs by May 2017. When presented with the draft QDROs for review, Sue believed the drafts did not

15

mirror the language suggested by the plans. Rather than allow the plan attorneys to review the drafts and make that determination, however, Sue prevented her retained QDRO attorney from submitting the drafts to the plans. And rather than work with the drafts that had already been prepared, she hired another QDRO attorney to prepare new drafts, without consulting David.

By the time of the March 2018 hearing, no QDROs had been submitted to the court even though the court had first directed their preparation almost a year and a half earlier and initial drafts had been drafted many months before. Sue's actions delayed the proceedings related to the QDROs and caused the expenditure of additional fees. These facts adequately support the family court's discretionary decision to impose section 271 sanctions.

C.    *Sanctions Under Code of Civil Procedure Section 128.7 Were Unavailable Because David's Attorney Did Not Follow Proper Procedure*

Code of Civil Procedure section 1008, which establishes the rules for filing motions for reconsideration, provides that a court may impose sanctions for violations "as allowed by [Code of Civil Procedure s]ection 128.7 [(section 128.7)]." (Code Civ. Proc., § 1008, subd. (d).) Section 128.7 allows a court to impose sanctions against parties who file papers in court frivolously, in bad faith, or otherwise improperly. (*Moofly Productions, LLC v. Favila* (2018) 24 Cal.App.5th 993, 997.) Section 128.7 also contains procedural requirements that must be satisfied before sanctions can be imposed.

"A motion for sanctions under [section 128.7] shall be *made separately* from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b)." (Code Civ. Proc., § 128.7, subd. (c)(1), emphasis added.) The notice of the motion must be served on the other party at least 21 days before

16

the motion is filed. (Code Civ. Proc., § 128.7, subd. (c)(1).) If the other party does not withdraw or correct the challenged conduct, the motion may then be filed, and the court may consider the motion for sanctions. (Code Civ. Proc., § 128.7, subd. (c)(1).)

The language of section 128.7 is unambiguous. The word "shall" requires a party seeking sanctions to serve a separate, formal motion for sanctions on the offending party at least 21 days before filing the motion with the court. Although David requested sanctions in his response to Sue's motion for reconsideration, and although David's counsel appears to have warned Sue that David would seek sanctions against her if she did not withdraw the motion, David neither served a motion for sanctions against Sue in advance nor filed a separate motion for sanctions with the court. That requires reversal of the section 128.7 sanctions order.[8] (See, e.g., *Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 698-700.)

_____

[8]     The concluding section of Sue's reply brief asks this court to transfer the matter to a different judge on remand. The request is made too late and baseless anyway.

17

DISPOSITION

The family court's August 10, 2018, order imposing sanctions on Sue is reversed. The family court's March 26, 2018, order, as it pertains to relief requested by David, is affirmed. The balance of Sue's appeal is dismissed. Costs on appeal are awarded to David.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


KIM, J.